# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

DOE I, *et al.*,

        Plaintiffs,

        v.

STARBUCKS CORPORATION,

        Defendant.

Civil Action No. 25-1261 (BAH)

Judge Beryl A. Howell

## <u>MEMORANDUM OPINION</u>

Plaintiffs, eight residents of Brazil who allege they were recruited by Brazilian labor traffickers and forced to work on coffee farms in Brazil, bring this putative class action in the District of Columbia against Washington State-based defendant Starbucks, claiming Starbucks violated the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. § 1595 *et. seq.*, Brazilian law, and common law doctrines of unjust enrichment and negligent supervision, based on factual allegations describing horrific conditions of forced labor.

Nonetheless, plaintiffs' complaint must be dismissed for failure to plead facts supporting personal jurisdiction over Starbucks. No allegations suggest that plaintiffs' alleged injuries by foreign actors in Brazil "arise out of or relate to" Starbucks's business operations in the District. *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1025 (2021) (*Bristol-Myers Squibb Co. v. Superior Ct. of California*, 582 U.S. 255, 262 (2017)). The only jurisdictional hook referenced is that Starbucks markets and sells coffee in the District—coffee that plaintiff alleges Starbucks purchased from one of its Brazil-based suppliers, which works with over ten thousand Brazil-based farms, which farms at one point included the eight farms in Brazil on which plaintiffs were forced to work. These allegations fall short. As controlling Supreme Court precedent has made clear, the mere fact that a corporation conducts "regularly occurring sales of a product in a

State" cannot confer specific jurisdiction "over a claim unrelated to those sales." *Bristol-Myers*, 582 U.S. at 264 (citation omitted). Plaintiffs have not demonstrated a link between their alleged trafficking and forced-labor injuries and Starbucks's coffee sales in the District. Thus, plaintiffs' complaint must be dismissed for lack of personal jurisdiction.

## I.    BACKGROUND

The factual and procedural history of this case is summarized below.

### A.    Factual Background

The relevant facts as alleged in plaintiffs' complaint are as follows. *See Casey v. McDonald's Corp.*, 880 F.3d 564, 567 (D.C. Cir. 2018) ("On a motion to dismiss, we must assume that the allegations of the complaint are true.").

Plaintiffs are eight individuals who reside in Brazil. Compl. ¶¶ 14-21. Between 2022 and 2024, plaintiffs were recruited by Brazilian labor traffickers to work on eight coffee farms in Brazil. *Id.* ¶¶ 113, 118-119, 122, 125, 132, 133. Upon arrival at the farms, plaintiffs were forced to harvest coffee under extremely degrading conditions, threats of bodily harm, debt-bondage tactics, and similar tactics. *See id.* ¶¶ 114-115, 118-119, 126-129, 134. Plaintiffs claim they were forced to work on these farms from anywhere between several days to over a month. *Id.* ¶ 114 (John Doe I, eight days); *id.* ¶ 119 (John Does II and III, ten days); *id.* ¶ 128 (John Does IV and V, about 40 days); *id.* ¶ 134-135 (John Does VI, VII, and VIII, "a few weeks" on one farm, and a "short[ ]" period on another). Each plaintiff was later "rescued" by Brazilian officials. *Id.* ¶¶ 114, 119, 129, 135. Subsequently, the Brazilian government placed at least six of the eight farms on the "Dirty List," a list maintained by the Brazilian government of employers known to use slave labor. *See id.* ¶¶ 114, 121, 122, 125, 136.

Starbucks, a coffee company headquartered and incorporated in the State of Washington, *id.* ¶ 28; *see also* Def.'s Mem. at 1, operates "over 16,000 retail outlets across all 50 states and the

District of Columbia," and markets its coffee "world-wide," *see* Compl. ¶¶ 29, 183.  Starbucks "purchase[s] coffee from cooperatives and middlemen, including Cooxupé." *Id.* ¶ 72.  In 2004, Starbucks partnered with Conservation International to develop an "ethical" sourcing certification program called Coffee and Farmer Equity (C.A.F.E.) Practices, *id.* ¶ 88, and, as of 2022, sourced 94.86% of their coffee from farms "certified" under their C.A.F.E. Practices program, *id.* ¶ 90, which includes suppliers like Cooxupé, *id.* ¶ 101.

Cooxupé "is the world's largest coffee cooperative and accounts for 10% of coffee exports from Brazil, reaching 50 countries." *Id.* at ¶ 72.  "From 2021-2023, Cooxupé accounted for 40% of coffee exported from Brazil to Starbucks in the United States." *Id.*  Cooxupé has over 18,000 member farms and, as of 2021, over 2,000 of those member farms supplied to Starbucks. *Id.* ¶¶ 72, 103.  Plaintiffs allege that seven of the eight farms on which they were forced to work were member farms of Cooxupé, *id.* ¶¶ 113, 118-119, 125, 133; the eighth farm "was owned by the Correa family and supplied to Heringe," which plaintiffs "believes with reasonable certainty supplies to Starbucks," *id.* ¶ 122.  Cooxupé reported "block[ing] and suspend[ing] its commercial activities" with farms upon learning of their placement on the Dirty List. *Id.* ¶ 77.

### B.    Procedural Background

In April 2025, plaintiffs filed the instant action against Starbucks on behalf of themselves and "the class of similarly situated workers harvesting coffee for Starbucks in Brazil." *Id.* ¶ 5. Seeking injunctive relief and damages, plaintiffs brought claims of "forced labor" and "trafficking" violations under the TVPRA; *id.* ¶¶ 138-166 (Count I, 18 U.S.C. §§ 1589, 1595); *id.* ¶¶ 167-176 (Count II, 18 U.S.C. §§ 1590, 1595); *id.* ¶¶ 177-184 (Count III, Aiding and Abetting Cooxupé's Ventures); aiding and abetting under Brazilian law, *id.* ¶¶ 185-190 (Count IV); and common law claims of unjust enrichment, *id.* ¶¶ 191-195 (Count V), negligent supervision, *id.* ¶¶ 196-200 (Count VI), and intentional infliction of emotional distress, *id.* ¶¶ 201-204 (Count VII).  In later

briefing, however, plaintiffs "agree[d] to the dismissal of Count III of their Complaint[] [for] Aiding and Abetting TVPRA violations," as well as "dismissal" of their "claim for inflection [sic] of emotional distress," under Count VII. Pls.' Opp'n Mot. to Dismiss ("Pls.' Opp'n") at 4 n.3 & n.4, ECF 14. Thus, only Counts I, II, IV, V, and VI remain. Plaintiffs in later briefing also "elect[ed] not to pursue their claim for injunctive relief based on" controlling D.C. Circuit precedent, and thus only plaintiffs' damages request remains. *Id.* at 43 n.20.

Starbucks is the only defendant named in the complaint. Plaintiffs bring no claims against the labor traffickers who recruited them, the farms where they worked, Cooxupé who purchased coffee from those farms, or any other individual or entity involved in the coffee supply chain.

Pending before the Court is Starbucks's motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), and failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), *see* Def.'s Mot. to Dismiss at 1, ECF No. 13; Def.'s Mem. Supp. Mot. to Dismiss ("Def.'s Mem."), ECF No. 14, which motion is now ripe to resolve, *see also* Pls.' Opp'n; Def.'s Reply Supp. Mot. to Dismiss ("Def.'s Reply"), ECF No. 15.

## II.    LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(2) challenges a lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2). To survive a motion to dismiss under Rule 12(b)(2), a plaintiff "must make a *prima facie* showing of the pertinent jurisdictional facts." *Livnat v. Palestinian Auth.*, 851 F.3d 45, 56–57 (D.C. Cir. 2017) (quoting *First Chicago Int'l v. United Exch. Co.*, 836 F.2d 1375, 1378 (D.C. Cir. 1988)). A *prima facie* showing requires specific factual allegations connecting the defendant to the forum. *First Chicago Int'l*, 836 F.2d at 1378-79. "When deciding personal jurisdiction without an evidentiary hearing—as here—the court must

resolve factual disputes in favor of the plaintiff." *Livnat*, 851 F.3d at 57 (internal quotation marks omitted). Conclusory statements and bare allegations are insufficient, however, and the court "need not accept inferences drawn by plaintiffs if such inferences are unsupported by the facts." *Id.* (internal quotation marks omitted).

The jurisdictional reach of this Court is coextensive with that of the District of Columbia. *See* Fed. R. Civ. P. 4(k)(1)(A). Relevant here, the District's long-arm statute, codified at D.C. Code § 13-423(a)(1)—which permits the exercise of jurisdiction over a corporation "as to a claim for relief arising from" its "transacting any business in the District"—"has been held 'to be coextensive . . . with the Constitution's due process limit.'" *Forras v. Rauf*, 812 F.3d 1102, 1106 (D.C. Cir. 2016) (quoting *Crane v. Carr*, 814 F.2d 758, 762 (D.C. Cir. 1987)). The limits of personal jurisdiction in this Court are thus the same as the general constitutional limits of personal jurisdiction established by the Supreme Court.

## III.    DISCUSSION

Following review of the legal principles governing the exercise of general and specific personal jurisdiction over a defendant, close analysis of plaintiffs' allegations demonstrates the required resolution of Starbucks's pending motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2).[1]

### A. Overview of General and Specific Jurisdiction

A plaintiff may establish personal jurisdiction in two ways: (1) by asserting general jurisdiction, which "extends to any and all claims brought against a defendant"; or (2) by asserting specific jurisdiction, which requires that "[t]he plaintiff's claims . . . arise out of or relate to the defendant's contacts with the forum." *Ford Motor*, 141 S. Ct. at 1024-25 (internal quotation marks

---

[1]    Since Starbucks's arguments for dismissal under Rule 12(b)(2) are persuasive, the alternative arguments for dismissal under Rules 12(b)(1) and (b)(6) need not be reached.

omitted).  General jurisdiction exists when a defendant's connections with the forum are "so continuous and systematic as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011).  For corporations, the "paradigm all-purpose forums" are the corporation's place of incorporation and principal place of business. *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014).  Here, plaintiffs do not dispute  that general jurisdiction cannot be exercised in this district over Starbucks, which "is incorporated and headquartered in the State of Washington."  Def.'s Mem. at 10; *see also* Pls.' Opp'n at 6 n.7 (characterizing Starbucks's arguments against general jurisdiction as "irrelevant" because "Plaintiffs are relying entirely on specific jurisdiction").

Specific jurisdiction, on the other hand, "covers defendants less intimately connected with a State, but only as to a narrower class of claims." *Ford Motor Co.*, 592 U.S. at 359.  Focusing on "the relationship among the defendant, the forum, and the litigation," *Shaffer v. Heitner*, 433 U.S. 186, 186 (1977), the specific jurisdiction analysis requires that a plaintiff's suit "arise out of or relate to the defendant's contacts with the forum," *Bristol-Myers*, 582 U.S. at 262.  Put simply, to establish specific jurisdiction, the plaintiff must show that an "adequate link" exists between his claims against the defendant and the forum.  *Id.* at 264.  "[A] defendant's general connections with the forum," such as "regularly occurring sales of a product in a State," "do not justify the exercise of jurisdiction over a claim unrelated to those sales."  *Id.* (citation omitted).

### B. Analysis

Plaintiffs fail to establish specific jurisdiction because they have not demonstrated that their trafficking and forced-labor claims "arise out of or relate to" defendant's sale of coffee in the District.  "[A]ll the conduct giving rise to [plaintiffs'] claims occurred elsewhere." *Id.* at 265.  Plaintiffs are foreign nationals asserting injuries suffered in a foreign country at the hands of

foreign actors, whom plaintiffs have not named as defendants in this suit.  Plaintiffs "are not [District] residents," nor do they "claim to have suffered harm in [the District]."  *Id.* at 265. Plaintiffs also do not allege facts suggesting that Starbucks ordered or facilitated their trafficking in Brazil, such as by "aid[ing] a given [farm], at a particular time and place, in" obtaining forced labor, *Smith & Wesson Brands, Inc. v. Estados Unidos Mexicanos*, 605 U.S. 280, 294 (2025); nor do plaintiffs allege that Starbucks's District employees had any role in, let alone made, the decision as to where to source coffee.  Plaintiffs also fail to allege facts showing that their forced-labor claims arise from Starbucks's "*particular* transaction of business" in the District.  *World Wide Mins., Ltd. v. Republic of Kazakhstan*, 296 F.3d 1154, 1168 (D.C. Cir. 2002) (emphasis added). No allegation is presented, for example, that Starbucks "intentionally directed" the specific coffee harvested by plaintiffs to be sold to consumers in the District, *Calder v. Jones*, 465 U.S. 783, 790 (1984), or even that Starbucks coffee sales in the District represent the large majority of Starbucks' total coffee sales nationwide.  In fact, other than generically asserting that Starbucks "does substantial and continuous business in the District," Compl. ¶ 28; *see also id.* ¶ 12 (same), plaintiffs' complaint contains little else connecting Starbucks' specific operations in the District to plaintiffs' recruitment by foreign labor traffickers and forced labor by foreign employers.  Such scant allegations are insufficient to establish the "link" required for specific jurisdiction.  *Bristol-Myers*, 582 U.S. at 264.

Plaintiffs counter that their claims "relate to" Starbucks' contacts with the District because Starbucks has stores in the District and "markets to consumers in the District with false and misleading claims" about the source of its coffee, leading to "excessive profits from its sales in the District of coffee."  Pls.' Opp'n at 7.  Such an expansive theory of specific jurisdiction, however, would allow plaintiffs to bring its trafficking claims against Starbucks in *every* State, as plaintiffs

themselves acknowledge that Starbucks operates "over 16,000 retail outlets across all 50 states and the District of Columbia" and markets its coffee "world-wide." *See* Compl. ¶¶ 28-29, 183. Yet, as the Supreme Court has made clear, "[f]or specific jurisdiction, a defendant's general connections with the forum are not enough"; the mere fact that a corporation conducts "regularly occurring sales of a product in a State" cannot confer "jurisdiction over a claim unrelated to those sales." *Bristol-Myers*, 582 U.S. at 264.

Further, plaintiffs' citations to "consumer fraud cases" under the District's Consumer Protection Procedures Act are inapposite. Pls.' Opp'n at 7. Plaintiffs point to D.C. Superior Court cases in which judges have exercised jurisdiction over corporate defendants where the plaintiffs, largely consumer advocacy groups, alleged that the defendants engaged in false and misleading advertising to District consumers. *See id.* (citing *Clean Label Project Foundation v. Nutraceutical Corp.*, No. 2020-CAB-003754, 2021 WL 506262 (D.C. Super. Jan. 25, 2021); *GMO Free USA v. Waterwipes*, No. 2025-CAB-001953, 2025 WL 2269769 (D.C. Super. Aug. 07, 2025); *Organic Consumer Association v. Perfect Day, Inc.*, No. 2025-CAB-000032, 2025 D.C. Super. LEXIS 22, at *11 (D.C. Sup. Ct. July 28, 2025)); *see also* Pls.' Notice of Supp. Authority at 1-2, ECF 16 (citing *Kassim v. Cargill, Inc.*, No. 2023-CAB-7264, 2026 WL 287143 (D.C. Super. Jan. 21, 2026)). Those cases, however, only underscore the lack of facts establishing specific jurisdiction here. In those cases, the plaintiffs alleged that *District residents* suffered harms from advertising actions taken by the defendants *in the District*, under a theory of liability related to misleading or deceptive advertising. *See, e.g.*, *GMO Free USA*, 2025 WL 2269769, at *2 (exercising personal jurisdiction over defendant in a case seeking relief "on behalf of D.C. Consumers" from "false and deceptive marketing," because defendant "purposely and affirmatively advertis[ed] to D.C. consumers online and in-store"); *Clean Label Project*, 2021 WL 506262, at *4 (same, because

"Plaintiff alleges that 'Defendant is engaged in deceptive schemes and acts directed at persons residing in, located in, or doing business in the District of Columbia' by marketing the Product in stores and online to consumers in the District of Columbia").

Plaintiffs' claims here differs markedly in two fundamental ways. First, plaintiffs are not District residents alleging harms suffered in the District, but rather are *Brazilian* workers alleging harms suffered *in Brazil*. Thus, any actions that Starbucks may have taken affecting plaintiffs relate not to Starbucks's contacts with consumers in the District, but rather to Starbucks's contacts with foreign actors in Brazil. Second, unlike in the consumer fraud cases where allegations of fraudulent advertising related directly to the plaintiffs' underlying consumer protection claim, here, allegations of fraudulent advertising have no discernable link to the underlying trafficking and forced-labor claims alleged by plaintiffs. Tellingly, plaintiffs complain only that Starbucks is "targeting and deceiving District consumers," but offer no explanation as to why any purported deception of District consumers affects *plaintiffs*, who are not District consumers. Pls.' Opp'n at 9; *see also id.* at 8-9 (arguing only that defendant "realize[d] extra profit" at "the expense of District consumers who are willing to pay extra for coffee they believed was subjected to strict monitoring and verification"). In short, plaintiffs' citations to consumer fraud cases show only that plaintiffs' claims are doubly removed from "aris[ing] out of or relat[ing] to the defendant's contacts with the forum." *Ford Motor*, 141 S. Ct. at 1024-25.

Finally, plaintiffs' plea for jurisdictional discovery in a passing footnote is denied. *See* Pls.' Opp'n at 9 n.10. As a general matter, courts "need not consider cursory arguments made only in a footnote." *GSS Grp. Ltd v. Nat'l Port Auth.*, 680 F.3d 805, 812 (D.C. Cir. 2012) (citation omitted). In any event, plaintiffs' vague request for jurisdictional discovery constitutes nothing more than an impermissible "fishing expedition." *Lewis v. Mutond*, 62 F.4th 587, 596 (D.C. 2023).

Plaintiffs have not described any "specific ways to supplement [their] allegations," *id.*, asserting only that "[f]ocused discovery on Starbucks' business in the District would answer the question [of specific jurisdiction] definitively" and citing to an inapposite products-liability case which permitted a plaintiff-consumer injured in the District to conduct jurisdictional discovery into the manufacturer's "advertising, marketing, and sales," Pls.' Opp'n at 9 n.10 (internal quotation marks omitted).  For all the reasons explained above, plaintiffs have not shown that additional facts about defendant's marketing tactics in the District would affect the jurisdictional analysis as to plaintiffs' claims of injuries suffered in Brazil at the hands of Brazilian employers.  After all, plaintiffs' trafficking or forced-labor injuries are not alleged to have arisen out of Starbucks's marketing practices in the District.  "Where there is no showing of how jurisdictional discovery would help plaintiff[s] discover anything new, it is inappropriate to subject defendant[] to the burden and expense of discovery."  *Saha v. Teladoc Health Med. Grp., P.A.*, No. 1:23-cv-03188, 2025 WL 2779977, at *5 (D.D.C. Sept. 30, 2025) (alteration and citation omitted).

Plaintiffs' complaint must therefore be dismissed for lack of personal jurisdiction.

## IV.    CONCLUSION

For the foregoing reasons, defendant's motion to dismiss the complaint, ECF No. 13, is GRANTED.    An order consistent with this Memorandum Opinion will be entered contemporaneously.

Date: February 17, 2026

_____
**BERYL A. HOWELL**
United States District Judge